# **EXHIBIT A**

(TO PLAINTIFF'S ATTORNEY:   PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT – MOTOR VEHICLE TORT – CONTRACT –
EQUITABLE RELIEF – OTHER)

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 2282CV1091

Kevin Jenkins _____, *Plaintiff(s)*

v.

Princeton Mortgage Company
(a/k/a Princeton Mortgage Corp.),
Richard Weidel, and Mark Gordon _____, *Defendant(s)*

### SUMMONS

Princeton Mortgage Corp., c/o Paracorp. Inc.
To the above-named Defendant: 44 School Street, Suite 505, Boston, MA 02108

You are hereby summoned and required to serve upon __Anne Josephson; Kotin, Crabtree__
plaintiff's attorney, whose address is Strong, One Bowdoin Sq., Boston, MA 02114
an answer to the complaint which is herewith served upon you, within 20 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You are also required to file your answer to the
complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's
attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim
which you may have against the plaintiff which arises out of the transaction or occurrence that is the
subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other
action.

WITNESS, Heidi E. Brieger   Esquire ), at _____ the 7th

day of __December__ _____, in the year of our Lord two thousand and twenty two

## A True Copy Attest

*michael B. F_____*
Constable
A disinterested person

_____ Clerk.

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption.
   If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

Court Appointed Special
Process Server.

DEC 8 – 2022

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on .................................., 20        , I served a copy of
the within summons, together with a copy of the complaint in this action, upon the within-named
defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

.......................................................................................................................

.......................................................................................................................

.......................................................................................................................

Dated: ........................., 20        ...................................................

N.B.   TO PROCESS SERVER:-
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON
DEFENDANT.

|  |
|---|
| , 20 |

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO.

........................, *Plaintiff*

v.

........................ *Defendant*

SUMMONS

(Mass. R. Civ. P. 4)

3.0

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY

12/1/2022

Motion is allowed as to all
prejudgment Service of Process
in the Commonwealth of Massachusetts.

(Davis J)

att: William Gibbons
Ass't Clerk

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                                        SUPERIOR COURT

|  |  |
|---|---|
| Kevin Jenkins, | ) |
| Plaintiff | ) |
| v. | ) |
| Princeton Mortgage Company (a/k/a Princeton Mortgage Corporation), Richard Weidel, and Mark Gordon, | ) |
| Defendants | ) |

Civil Action No. 2282-cv-01091

## PLAINTIFF'S MOTION TO APPOINT A SPECIAL PROCESS SERVER

Pursuant to the provisions of Mass. R. Civ. P. 4(c), Plaintiff Kevin Jenkins requests that

the Court appoint Michael B. Fixman and Alan Bishop of Michael B. Fixman & Associates, 14

Norwood Street, Everett, MA 02149 to effect service of process on defendant, Princeton

Mortgage Company (a/k/a Princeton Mortgage Corporation), through its registered agent in

Massachusetts in the above-captioned matter.  Plaintiff states that Michael B. Fixman and Alan

Bishop are over the age of eighteen (18) and are disinterested parties to this action, and are experienced in the service of process.

Respectfully submitted,

KEVIN JENKINS

By his attorneys,

Anne L. Josephson
BBO # 254680
ajosephson@kcslegal.com
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114
(617) 227-7031

Dated:  November 29, 2022

I ATTEST THAT THIS DOCUMENT IS A
CERTIFIED PHOTOCOPY OF AN ORIGINAL
ON FILE

Deputy Assistant Clerk
12/2/22

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) | Trial Court of Massachusetts Superior Court Department County:_____ |
|---|---|---|

**PLAINTIFF(S)**
Kevin Jenkins

**DEFENDANT(S)**
Princeton Mortgage Co. a/k/a Princeton Mortgage Corporation; Richard Weidel; Mark Gordon

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**
Anne L. Josephson, Esq.; Kotin, Crabtree & Strong, LLP; One Bowdoin Square, 8th Floor; Boston, MA 02114. (617) 227-7031.
Board of Bar Overseers number: **#254 680**

**ATTORNEY** (if known)

## Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct.C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99/B22 | Wage Act Employment Discrimination | ( F ) | ( X ) Yes    ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
  2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
  3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
  4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
  5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
  Subtotal $. . . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . $. . . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
F. Other documented items of damages (describe)
  $. . . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

  $. . . . . . . . . . . .
  TOTAL $. . . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):
Failure to pay earned commissions in violation of contract and the Massachusetts Wage Act, G.L. c. 149, §§148 et seq.; hostile work environment, demotion, and termination on account of age in violation of G.L c. 151B. Damages include back and front pay estimated to be at least $100,000, emotional distress estimated to be at least $300,000, and mandatory treble damages for past and continuing failure to pay earned commissions estimated to be at least $225,000. **TOTAL $. $625,000.00+.**

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT    None.

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record _____Anne L. Joseph_____    DATE:11/23/22

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

# COMMONWEALTH OF MASSACHUSETTS

**NORFOLK, SS.**                                        **SUPERIOR COURT**

|  |  |
|---|---|
| Kevin Jenkins, ) | |
| Plaintiff ) | |
| v. ) | Civil Action No. |
| Princeton Mortgage Company ) | |
| (a/k/a ) | |
| Princeton Mortgage Corporation), ) | |
| Richard Weidel, and ) | |
| Mark Gordon, ) | |
| Defendants ) | |

## COMPLAINT AND JURY DEMAND

### Introduction

1. By this action, the plaintiff Kevin Jenkins ("Mr. Jenkins"), a former employee of the defendant Princeton Mortgage Company (a/k/a Princeton Mortgage Corporation), seeks legal and equitable relief arising from the defendants' unlawful conduct as set forth below. In violation of their obligations under G.L. c. 151B, the defendants discriminated against Mr. Jenkins on account of his age by creating a hostile workplace environment for him, by demoting him, and by ultimately terminating his employment, replacing him with a younger, less qualified, and less experienced employee. In addition, as more fully set forth below, the defendants failed to pay Mr. Jenkins earned commissions under his then-current compensation plan, which both breached the defendants' contractual obligations to Mr. Jenkins and which violated the Massachusetts Wage Act, G.L. c. 149, §§ 148 and 150.

### Parties

2. The plaintiff Kevin Jenkins ("Mr. Jenkins") is an individual residing at 49 Horace Street, Needham, Norfolk County, Massachusetts.

3. The defendant Princeton Mortgage Company, a/k/a Princeton Mortgage Corporation, ("PMC" or "the Company") is a corporation whose principal place of business is

1

located at 439 Grand Avenue, Ewing, New Jersey. PMC is a private mortgage banker that does business throughout the United States, including in Massachusetts.

4. The defendant Richard Weidel ("Mr. Weidel") an individual who, upon information and belief, resides in Princeton, New Jersey. At all relevant times, Mr. Weidel served as PMC's Chief Executive Officer.

5. The defendant Mark Gordon ("Mr. Gordon") is an individual who, upon information and belief, resides in or near Mount Pleasant/Charleston, South Carolina. At all relevant times, Mr. Gordon served as PMC's Chief Revenue Officer.

## Statement of Facts

6. Mr. Jenkins is a seasoned professional in the retail mortgage banking field, with thirty-six (36) years' experience in the industry. He is fifty-nine years old.

7. Prior to joining PMC, Mr. Jenkins was employed by Paramount Residential Mortgage Group, Inc. ("PRMG"), one of the nation's top Leading Lenders in the mortgage industry. There, Mr. Jenkins successfully led PRMG's growth and production effort in the New England market.

8. In late 2020, with an aggressive goal of growing its retail sales production from $300 million to $10 billion over the course of the next seven years, PMC heavily recruited Mr. Jenkins to leave PRMG and to become PMC's Head of Retail Sales. During the recruiting process, Mr. Gordon, PMC's Chief Revenue Officer and the person to whom Mr. Jenkins would report, told Mr. Jenkins that under the compensation plan that PMC was prepared to offer, he could expect to earn $350,000 in his first year of employment and even more thereafter.

9. After months of meetings with PMC's leadership team and several of its managers (all of whom appeared to be under 40 years of age), Mr. Jenkins accepted PMC's offer, resigned from his employment at PRMG, and began work at PMC in early January, 2021. The terms of Mr. Jenkins' employment are set forth in an Offer Letter dated December 23, 2020, a true and accurate copy of which is attached hereto as **Exhibit A.**

10. Mr. Jenkins' mandate as the Head of Retail Sales at PMC was to build and manage a retail sales team that could meet the Company's aggressive financial goals. Although the existing sales team was not nearly as robust as had been represented to Mr. Jenkins prior to accepting PMC's offer, Mr. Jenkins managed to grow the Company's retail sales business by 400% in 2021 and the first quarter of 2022 – a result that PMC had never achieved before.

11. Mr. Jenkins exceeded PMC's performance expectations despite significant challenges that PMC put in his path.

2

12. Specifically, beginning in February, 2021, Mr. Gordon began making demeaning comments about Mr. Jenkins' age. (Mr. Gordon, in his thirties, is approximately twenty years younger than Mr. Jenkins.) For example:

- Mr. Gordon repeatedly, and for months, referred to Mr. Jenkins dismissively as "old," or as "the old guy."

- In addition to referring to Mr. Jenkins as "old" when speaking with him, Mr. Gordon made jokes and comments about Mr. Jenkins' age and referred to him as "the old guy" when speaking with those who worked with Mr. Jenkins, such as members of the sales and recruiting teams who reported to him; when speaking with managers who worked with Mr. Jenkins; when engaging in conversation at work events, including those at which Mr. Gordon's wife Nicole was present; and even when speaking to one of the Company's most promising sales team candidates.

- Mr. Gordon's comments included slights like: "He doesn't know technology; he's an old guy."

- In Mr. Jenkins' presence, Mr. Gordon confided to another employee, that "guys who are young like Rich [the CEO], me, and you, have the ability to grow, no offence to Kevin, but it takes a lot of youthful energy."

- Mr. Gordon complained (inaccurately) that Mr. Jenkins only tended to attract older candidates, stating (falsely) that that was the reason that the Company was not meeting its goals.

- In late April, when Mr. Jenkins was suffering from COVID, Mr. Gordon told him that he "question[ed Mr. Jenkins'] energy level," and told him: "Maybe this is too much for you at your age."

13. Unfortunately, Mr. Gordon's disrespectful ageist comments gave others in the Company permission to join in, making Mr. Jenkins a frequent butt of age-related jokes in the workplace, including jokes from employees who reported to him. Mr. Gordon's frequent and public humiliation of Mr. Jenkins on account of his age undermined Mr. Jenkins' ability to lead his team effectively and to maintain the respect of those with whom he worked.

14. Mr. Jenkins informed Mr. Gordon that his persistent age-related comments were highly offensive to him and created barriers to his ability to perform his job effectively. Upon information and belief, the Company took no action to protect Mr. Jenkins from Mr. Gordon's discriminatory behavior.

15. In mid-April, 2021 – before Mr. Jenkins had even had a chance to serve as PMC's Head of Sales for ninety days – Mr. Gordon told him that he and PMC's CEO, Mr. Weidel, were considering reducing his job to a "business development' role and reducing his compensation substantially.

16. Mr. Gordon also told Mr. Jenkins that another employee, Jeff Waldrup ("Mr. Waldrup") --a manager in his thirties with far less experience than Mr. Jenkins, would be taking over a key part of Mr. Jenkins' job – not only overseeing the in-house sales recruiting team, but also following through on leads that the in-house team generated. Upon information and belief, this change could not have happened without Mr. Weidel's knowledge and consent. The change left Mr. Jenkins without a key resource he needed to build the Company's retail sales team and to perform his job.

17. At the time, Mr. Gordon justified these new and prospective changes by telling Mr. Jenkins that the in-house recruiting team had lost confidence in his leadership, and that, as a result, the recruiting results were not up to par.

18. Mr. Gordon's justifications, however, do not withstand factual scrutiny. In fact, by mid-April, 2021, Mr. Jenkins had been able to build a pipeline of prospective candidates with a combined track record of over $1billion in annual sales. In the first quarter of 2021, the Company had already hired retail sales professionals with a combined track record of $150 million in annual sales. Mr. Weidel, the Company's CEO, made public statements to the effect that it had been the best recruiting quarter *ever,* in the entire history of the Company.

19. Thus, contrary to Mr. Gordon's assertion that Mr. Jenkins' recruiting results were not "up to par," his recruiting results had, in fact, exceeded all reasonable expectations. As to Mr. Gordon's assertion that Mr. Jenkins had "lost the confidence of [his] team," it was, in fact, Mr. Gordon himself who had undermined Mr. Jenkins' ability to lead his team, given the frequent dismissive and discriminatory comments he made in front of the people who reported to Mr. Jenkins.

20. Well before the end of the second quarter of 2021, PMC's senior leadership realized that Mr. Waldrup could not effectively assume Mr. Jenkins' role and had Mr. Jenkins resume responsibility for following through on the leads generated by the in-house recruiting team. For the time being, the talk of demoting Mr. Jenkins and/or changing his compensation plan was dropped.

21. Nevertheless, by mid-May, 2021, Mr. Gordon announced that David Trisler ("Mr. Trisler") (a long-standing friend of Mr. Gordon's with little relevant experience, and who was at least ten years younger than Mr. Jenkins) would be taking over the day-to-day management of PMC's retail sales team. Upon information and belief, this

4

change could not have happened without the knowledge and consent of the Company's CEO, Mr. Weidel.

Mr. Jenkins was not consulted about this change, and the change generated particular concern among recently hired members of the sales team, who had agreed to come on board thinking that they would be reporting to Mr. Jenkins. Indeed, at some point after Mr. Trisler took over the day-to-day management of the retail sales team, one of the teams' biggest producers – a person who had come to the Company thinking that he would be working under Mr. Jenkins' direction– quit.

22. In September, 2021, PMC hired Matt Bernhard ("Mr. Bernhard") to lead the recruiting team. Mr. Bernhard is at least twenty years younger than Mr. Jenkins am and had no prior experience building retail mortgage recruiting teams. Mr. Jenkins' responsibilities with respect to the management of recruiting team were effectively removed, and his job was effectively limited to following up on recruiting leads and converting them into new hires. Mr. Jenkins was also instructed to train Mr. Bernhard so that he could develop skills in this area.

23. On November 1, 2021, Mr. Gordon sent Mr. Jenkins a document outlining what his compensation and role would be going forward. Mr. Jenkins learned on that date that PMC had made the unilateral decision to cut his base compensation in half, and to pay him a commission on the loans generated by the people he had recruited to join the Company. The commission portion of the compensation plan is similar to the commissions that PMC regularly pays its outside recruiters, although the percentage it decided to pay Mr. Jenkins is lower by half.

24. According to the new compensation plan dated November 1, 2021, Mr. Jenkins' position at PMC was downgraded from Head of Retail Sales to "Business Development Manager." A true and accurate copy of the new compensation plan is attached hereto as **Exhibit B**.

25. By November, 2021, Mr. Bernhard had started pursuing leads generated by the sales recruiting team, thereby cutting into the only job function that remained available to Mr. Jenkins. When Mr. Jenkins asked about this, Mr. Bernhard explained that, henceforth, some of the leads from the inside sales team would go to him and some would go to Mr. Jenkins. Mr. Bernhard told Mr. Jenkins that the Company wanted him to focus on pursuing leads from outside recruiters – a much more difficult proposition than following up on the leads generated in-house.

26. Despite these challenges, Mr. Jenkins continued to be the primary contributor to the growth of the Company's retail sales force, accounting for over 80% of the growth that occurred in 2021 and for virtually all of the growth that occurred in 2022.

27. Mr. Jenkins' 2022 achievements included the hiring the most promising loan officer that the Company had ever hired, with a track record of $200 million in annual sales. Mr. Jenkins was also able to convince a loan officer with $50 million in annual sales to join the PMC retail sales force.

28. On March 14, 2022, Mr. Bernhard and Ms. Carter, Director of HR, called Mr. Jenkins and told him that his position had been eliminated effective that day. As of that day, PMC stopped paying Mr. Jenkins commissions on the loans closed by those whom he had hired, thereby breaching the terms of the revised compensation plan under which he was entitled to receive certain commission payments for fifteen months even in the event of a termination without cause. **See, Exhibit B**.

29. Since that time, the defendants have failed and/or refused to provide Mr. Jenkins with an accounting of the monthly loan closings that should have served as a basis for his commission payments from November 1, 2021 to Mr. Jenkins' termination date of March 14, 2022. In addition, since that time, the defendants have failed and/or refused to pay Mr. Jenkins the commissions he is owed, post-termination, on the basis of loan closings made by recruits he had hired between November 1, 2021 and his termination date of March 14, 2022.

30. As of March 14, 2022, at the age of fifty-eight, Mr. Jenkins was left to seek new employment in one of the worst mortgage markets in his professional lifetime, and was left to explain to prospective employers why, after barely more than one year, he was looking for a job.

### Statement of Claims

### COUNT I:  VIOLATION OF G.L. c. 151B (Against All Defendants)

31. Mr. Jenkins repeats the allegations set forth in Paragraphs 1 through 30 and, by this reference, incorporates them herein.

32. The barriers that PMC, Mr. Weidel, and Mr. Gordon placed in Mr. Jenkins' path, which included humiliating demotions leading to his termination, were clearly motivated by negative stereotypes about Mr. Jenkins' age.

33. Despite Mr. Jenkins' strong performance and outstanding results, Mr. Gordon and Mr. Weidel viewed him as too old for the job, and Mr. Gordon openly said as much to anyone who would listen.

34. Mr. Gordon undermined Mr. Jenkins' ability to lead the retail sales team and, with Mr. Weidel's knowledge and consent, repeatedly gave Mr. Jenkins' job responsibilities to individuals who were far younger and far less qualified than he was. Ultimately, with Mr. Weidel's blessing, Mr. Gordon removed Mr. Jenkins

entirely from the leadership position for which he was hired and slashed his
compensation. The Company then terminated Mr. Jenkins' employment when it felt
that Mr. Bernhard was ready to replace him.

35. Mr. Jenkins' job was not "eliminated," as he was told on March 14, 2022. Mr.
Jenkins' job was simply given to Mr. Bernhard, an individual who is at least twenty
years Mr. Jenkins' junior, with no track record of success.

36. By their conduct as set forth above, the defendants have discriminated against Mr.
Jenkins on the basis of his age.

37. As a result of their conduct as set forth above, Mr. Jenkins has suffered loss and
damage for which the defendants are jointly and severally liable.

38. On July 20, 2022, Mr. Jenkins filed a timely Charge of Discrimination with the
Massachusetts Commission Against Discrimination, thereby satisfying the statutory
prerequisite for the filing of a claim in Superior Court under G.L. c. 151B, § 9.

## COUNT II: BREACH OF CONTRACT (Against PMC)

39. Mr. Jenkins repeats the allegations set forth in Paragraphs 1 through 30 and, by this
reference, incorporates them herein.

40. By their conduct as set forth above, PMC has violated its contractual obligation to
pay Mr. Jenkins commissions on recruits hired between November 1, 2021 and his
termination date, March 14, 2022.

41. By their conduct as set forth above, PMC has caused Mr. Jenkins to suffer loss and
damage for which PMC is liable.

## COUNT III: VIOLATION OF MASSACHUSETTS WAGE ACT, G.L. c. 149, §§ 148 and 150. (Against All Defendants)

42. Mr. Jenkins repeats the allegations set forth in Paragraphs 1 through 42 and, by this
reference, incorporates them herein.

43. At all relevant times, Mr. Weidel as Chief Executive Officer was effectively the
"president" of PMC and Mr. Gordon as Chief Revenue Officer was effectively the
"treasurer" of PMC with individual liability under G.L. c. 149, § 148.

44. At all relevant times, Mr. Weidel as Chief Executive Officer and Mr. Gordon as Chief
Revenue Officer were officers "having the management" of PMC, and are therefore
each individually liable under G.L. c. 149, § 148. For example, Mr. Weidel and Mr.
Gordon controlled, directed, and participated to a significant degree in formulating

and determining the financial policies of the Company. They were jointly responsible for determining the organizational and management structure of the Company; were jointly responsible for making decisions about the hiring and staffing of the executive team reporting to them, and were jointly responsible for determining the compensation to be provided to Company employees, including those on their executive team. They were, in fact, jointly responsible for setting the terms of Mr. Jenkins' employment, including the scope of his responsibilities and the terms of his compensation, and for deciding when, whether, and how much Mr. Jenkins would be paid.

45. The defendants failed to pay any commissions due to Mr. Jenkins from and after the date of his termination, March 14, 2022, even though he had earned commissions on all loan closings made by recruits he had hired from and after November 1, 2022.

46. The defendants' failure and refusal to pay Mr. Jenkins the commissions he earned on loan closings made by recruits that he had hired from and after November 1, 2022 constitute a violation of the Massachusetts Wage Act, G.L. c. 149, § 148.

47. The defendants were also obligated to pay Mr. Jenkins commissions on certain loan closings made prior to November 1, 2022, as set forth in the compensation plan attached as **Exhibit B**. To the extent that the defendants have failed to pay Mr. Jenkins the actual amounts due to him prior to his termination, their failure is also a violation of the Massachusetts Wage Act, G.L. c. 149, § 148.

48. Mr. Jenkins filed a complaint with the Fair Labor Division of the Office of the Attorney General on August 10, 2022. On August 16, 2022, the Fair Labor Division issued a letter authorizing Mr. Jenkins to pursue a private right of action under the Massachusetts Wage Act.

## Requests for Relief

WHEREFORE, Mr. Jenkins requests that this Court:

1. Order the defendants to provide an accounting of the commissions due and payable to Mr. Jenkins from and after November 1, 2021;

2. Enter judgment in Mr. Jenkins' favor on all Counts of this Complaint;

3. Award Mr. Jenkins actual and compensatory damages, including but not limited to damages for lost wages and benefits (past and future), and for emotional distress;

4. Award Mr. Jenkins punitive damages for the defendants' violation of G.L. c. 151B;

5. Award Mr. Jenkins treble damages as required by law for the defendants' violation of the Massachusetts Wage Act;

6. Award Mr. Jenkins attorneys' fees, costs, and interest as allowed by law; and

7. Grant such other relief as this Court deems just.

## Jury Demand

THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Respectfully submitted,

KEVIN JENKINS

By his attorneys,

Anne L. Josephson
BBO # 254680
ajosephson@kcslegal.com
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114
(617) 227-7031

Dated:  November 23, 2022

9

# EXHIBIT A



### Offer of Employment: Head of Retail Sales

December 23, 2020

Kevin Jenkins

Dear Kevin,

We are excited to offer you the position of Head of Retail Sales at Princeton Mortgage!

We want to see our customers and our employees succeed. We want this to be a place where people work for what they want, not what we want – a place where people can discover and pursue their potential. After getting to know you, we are confident you will be a great fit at Princeton Mortgage.

This position:

- Is a full-time, exempt position that is not eligible for overtime pay
- Reports to Mark Gordon, National Sales Director
- Has a scheduled start date of January 4, 2021

If you accept this offer you will be paid:

- Salary: $7,291.67 paid semi-monthly in accordance with normal payroll procedures
- A draw against bonus of $5,208.33 paid semi-monthly in accordance with normal payroll procedures. The draw will be forgiven if the employee remains with the company for one (1) anniversary year.
- If the Company terminates the employee for cause (as defined either in our code of conduct or in offer letter) or if the employee terminates employment with the company before the one (1) anniversary of the employee's first work day at PMC (January 4, 2021 ), the employee is required to repay the unearned draw to the company, within ten (10) days of the last day worked by the employee. The employee shall repay the bonus amount on a net after-tax basis (determined after taking into account other applicable deductions such as benefit premiums)
- Bonus: One percent (1%) of retail revenue minus loan officer and branch compensation.

You will be eligible for all programs and benefits available to all Princeton Mortgage employees. Our benefits package includes:

- Comprehensive medical, dental, and vision insurance
- 401K retirement plan, eligible after six-months of continuous employment
- Company-paid holidays
- Paid time off (PTO) earned on an accrual basis indexed at Level 3 (currently 21 days)

This offer letter is not a contract of employment guaranteeing any term of employment or the continuation of any level of salary or benefits. Your employment with Princeton Mortgage will be "at-will." No other oral or written statement or policy will alter your status as an at will employee, unless such change is stated clearly and expressly in a formal contract executed by you and by the CEO of the Company.



This job offer is contingent upon the successful completion of an employment background check. All employment with company is subject to the policies and procedures generally applicable to all employees as outlined in the Employee Handbook and, by accepting employment, you agree to be bound by and comply with all policies and procedures. You hereby represent and warrant to Princeton Mortgage that you have no legal obligations (including, but not limited to, any non-compete/non-solicitation or other comparable agreement that prohibit you from performing your duties). This offer letter comprises the complete terms of the offer regarding your employment. Any oral or written promises or commitments of any kind made by Princeton Mortgage during the interview process or made by a supervisor or manager or anyone else at Princeton Mortgage during your employment, are not valid unless contained in writing from the CEO or Head of People Operations.

To accept, please sign, date, and return this letter by December 28, 2020. Once we have received your signed offer letter we will contact you to go over remaining paperwork and next steps.

We look forward to working with you at Princeton Mortgage.


_____   Date: _December 23, 2020_
By: James T. Guggenheim
Executive Vice President, Princeton Mortgage Corporation


**Agreed to and Accepted by:**


_____
Name (Printed)


_____ Date: _____
Name (Signature)

# EXHIBIT B

Kevin Jenkins- Business Development Manager

$150,000 Base Salary

2bps for 15 months on candidates sourced through the front-line recruiting team or candidates referred to Princeton by current employees.

4bps for 15 months on self-sourced candidates or candidates from outside recruiters.

All recruits with a hire date between 11/1/21 and 12/31/222 will be paid out to Kevin even if he is terminated without cause. If Kevin resigns or is terminated for cause (cause being conduct detrimental to the company or consecutive quarters of documented under performance) commission payments will cease on Kevin's last day of employment.

For the candidates below, compensation of 2bps will be paid to Kevin for loans closed starting in November 2021 and will be paid through the loan officers 15th month of employment with Princeton Mortgage. This commission is not guaranteed in the event of a separation between Princeton and Kevin regardless of the reason.

| Start Date | LO | Origination Units | Closing Units | Funding Loan Amounts | Projected Volume |
|---|---|---|---|---|---|
| 1/11/21 | Vishal Vaghani | 26 | 15 | 3,607,270.00 | $13,000,000 |
| 2/8/21 | Jeff Armstrong | 60 | 38 | 8,668,428.00 | $20,000,000 |
| 3/15/21 | Ivan Ruiz | 26 | 16 | 4,152,262.00 | $15,000,000 |
| 3/31/21 | Barbara Sedunov | 53 | 39 | 7,435,669.00 | $24,000,000 |
| 5/3/21 | Melissa Shinka | 9 | 3 | 1,015,145.00 | $0 |
| 5/10/21 | Joshua Purvis | 57 | 23 | 6,273,010.00 | $50,000,000 |
| 5/24/21 | Patrick Ridley | 14 | 8 | 2,015,300.00 | $12,000,000 |
| 6/1/21 | Raymond Lozano | 11 | 5 | 1,369,355.00 | $10,000,000 |
| 6/1/21 | Preston Lope | 0 | 0 | 0 | $20,000,000 |
| 6/21/21 | Sean Troncoso | 10 | 2 | 670,000.00 | $15,000,000 |
| 6/30/21 | Andrew Evans | 22 | 9 | 2,001,350.00 | $25,000,000 |

| 6/30/21 | Anne Clermont | 5 | 4 | 1,015,050.00 | $10,000,000 |
| 6/30/21 | Brent McDonald | 19 | 11 | 3,742,930.00 | $40,000,000 |
| 7/26/21 | Chris Farquhar | 3 | 2 | 1,025,000.00 | $14,000,000 |
| 8/16/21 | Eric Krieger | 6 | 2 | 440,000.00 | $30,000,000 |
| 8/23/21 | Victor VanMeerbeeck | 5 | 2 | 368,500.00 | $25,000,000 |
| 8/23/21 | Joshua Holley | 1 | 0 | 0 | $0 |
| 9/24/21 | Woody Geoghegan | 3 | 0 | 0 | $23,000,000 |
| 9/27/21 | Marc Kade | 3 | 0 | 0 | $50,000,000 |
| 10/4/21 | Mauricio Urbina | 0 | 0 | 0 | $5,000,000 |
| 11/1/21 | Mark Canale | 0 | 0 | 0 | $60,000,000 |

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2282CV01091 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Kevin Jenkins vs. Princeton Mortgage Company Also Known As Princeton Mortgage Corporation et al | Walter F. Timilty, Clerk of Courts |
|---|---|

| TO: Anne L Josephson, Esq. Kotin Crabtree and Strong LLP One Bowdoin Square Boston, MA 02114 | COURT NAME & ADDRESS Norfolk County Superior Court 650 High Street Dedham, MA 02026 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

#### STAGES OF LITIGATION                                          DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 02/21/2023 | |
| Response to the complaint filed (also see MRCP 12) | | 03/23/2023 | |
| All motions under MRCP 12, 19, and 20 | 03/23/2023 | 04/24/2023 | 05/22/2023 |
| All motions under MRCP 15 | 03/23/2023 | 04/24/2023 | 05/22/2023 |
| All discovery requests **and depositions** served and non-expert depositions completed | 09/19/2023 | | |
| All motions under MRCP 56 | 10/19/2023 | 11/20/2023 | |
| Final pre-trial conference held and/or firm trial date set | | | 03/18/2024 |
| Case shall be resolved and judgment shall issue by | | | 11/22/2024 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 11/23/2022 | ASSISTANT CLERK | PHONE |
|---|---|---|